**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**v.**<br>**DEVONTEE PARKER,**<br>**Defendant.** | **Case No. 25-cr-96 (JDB)** |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through the undersigned counsel, hereby submits this response to the Defendant's February 11, 2026, Motion to Suppress (ECF No. 48-1). For the reasons set forth below, this Court should deny the motion.

**RELEVANT FACTUAL BACKGROUND**

On March 3, 2024, in Chandler, Arizona, Chandler police responded to a domestic disturbance call. After interviewing defendant Parker and victim A.L. on scene, police arrested Parker for disorderly conduct. Defendant's gold-colored phone (the "Gold Phone") and a car key were seized from his person incident to his arrest. During the officers' investigation, A.L. disclosed that Parker had been forcing her to engage in commercial sex acts. After hearing the sex trafficking allegations by A.L., Chandler police seized the car key and Gold Phone as evidence in a continuing investigation.

At some point that day, the car key was taken back to the scene and given to A.L. to access the 2017 Kia, which was registered to A.L. A.L. then retrieved a blue-colored phone (the "Blue Phone"), which she identified as her work phone, from the Kia and unlocked it with her fingerprint. She also gave the Blue Phone's passcode to the responding officer and provided her consent to

search it. The officer then reviewed some texts and websites on the phone, including about 30-40 recent messages from "johns" (a.k.a. clients) responding to commercial sex ads.

On March 19, 2024, Chandler police secured search warrants to extract data from both phones to search for evidence to support A.L.'s sex trafficking allegations. As part of his subsequent state prosecution on trafficking-related charges, the defendant filed a motion to suppress evidence from the phones with the Superior Court of Arizona. The court denied the motion on April 22, 2025. *See* Def.'s Mot. Dismiss Ex. C, ECF No. 51. The court held that both phones had been lawfully seized, and that the search warrant to extract the phones' data was lawful. As to the Blue Phone, the court found that even if the defendant had bought and paid the bills for the Blue Phone, he did not have a reasonable expectation of privacy in the phone because A.L. had "apparent authority sufficient to give consent" for the police to seize and search the phone. The court further found that the Gold Phone was properly seized as evidence related to the sex trafficking charges that the state was pursuing—after a lawful initial seizure incident to his arrest—and that based on A.L.'s allegations, the search warrant to extract the data from both phones was lawful.

As part of the instant federal investigation, the FBI requested Chandler police to send its extractions of the Blue and Gold Phones to the District of Columbia as evidence in this case. Parker now wishes to relitigate his failed Arizona motion to suppress evidence from the phones before this Court.

**ARGUMENT**

The Fourth Amendment to the Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of property occurs "when there is some meaningful interference with an

individual's possessory interests in that property." *United States v. Miller*, 799 F.3d 1097, 1102 (D.C. Cir. 2015) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). The reasonableness of such a seizure "turns on the nature and extent of interference" with the individual's possessory interests. *Id.* Seizure of items on a defendant's person at the time of arrest is lawful and falls under the warrant exception. *Riley v. California*, 573 U.S. 373, 382-85; *United States v. Robinson*, 414 U.S. 218, 230-234 (1973); *Chimel v. California*, 395 U.S. 752, 763 (1969)

A search without a warrant is unreasonable under the Fourth Amendment unless a person with possessory interest in the item being searched provides consent. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Justification for the search "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974); *see also United States v. Law*, 528 F.3d 888, 904 (D.C. Cir. 2008). Common authority "arises simply from 'mutual use of the property by persons generally having joint access or control for most purposes.'" *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014) (quoting *Matlock*, 415 U.S. at 171).

The government has the burden to establish that the third party had the authority to consent to a search. *Rodriguez*, 497 U.S. at 181; *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991). But "[e]ven a person who does not *actually* use the property can authorize a search if it is reasonable for the police to believe she uses it. Such 'apparent authority' is sufficient to sustain a search because the Fourth Amendment requires only that officers' factual determinations in such situations 'always be reasonable,' 'not that they always be correct.'" *Peyton*, 745 F.3d at 552 (quoting *Rodriguez*, 497 U.S. at 185–87); *see also Georgia v. Randolph*, 547 U.S. 103, 110 (2006).

When a search pursuant to a warrant is being challenged, this Court must determine if probable cause exists. An affidavit in support of a warrant application "must provide the magistrate with a substantial basis for determining the existence of probable cause," and it cannot consist of "wholly conclusory statement[s]." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Supreme Court has described the assessment of probable cause for purposes of a search warrant as "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. The reviewing court must "ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39. When making this determination, judges "need not confine their evaluations within rigorous legalistic boundaries but instead may use their common sense." *United States v. Davis*, 617 F.2d 677, 692 (D.C. Cir. 1979).

Even when evidence is determined to have been gathered in violation of the Fourth Amendment, this evidence is not necessarily automatically suppressed. If the officer gathering evidence had an objectively reasonable reliance on a search warrant, the exclusionary rule will typically not apply. *See, e.g.*, *United States v. Leon*, 468 U.S. 897, 922 (1984). This is because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984). That said, there are several exceptions to this good faith principle, one of which is that suppression is appropriate "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926.

None of the circumstances that would warrant suppression of the evidence are present here. First, both phones and the car key were seized lawfully. The Blue Phone was in A.L.'s registered vehicle, and she used her thumbprint to open it. By the time officers had accessed the car and the

Blue Phone, A.L. had already disclosed that the defendant had been forcing her to engage in commercial sex acts. A.L. provided her consent to search the Blue Phone and provided the officers with the passcode. Based on these facts, she had clear "common authority" over the phone and gave valid consent, despite the defendant's assertions otherwise. *See Matlock*, 415 U.S. at 171; *see also United States v. Manafort*, 313 F. Supp. 3d 213, 220 (D.D.C. 2018) (holding that "the record supports a finding that permission to search was obtained from a person who possessed—at the very least—common authority over the premises to be inspected, and a warrant was not required"). Later, Chandler Police obtained a search warrant supported by probable cause to extract and search the data on the Blue Phone. This warrant was based on probable cause that the phone contained evidence related to the sex trafficking allegations that the police were then investigating. *See Gates*, 462 U.S. 213, 238-39. The Defendant does not appear to dispute the legality of the search warrant in his motion.

Likewise, the Gold Phone and the car key were properly seized. The Gold Phone and the car key were on the defendant's person at the time of his arrest and were therefore lawfully seized incident to his arrest. *See Riley*, 573 U.S. at 385-86 (recognizing that while a phone and other items on a person can be seized incident to arrest, officers must generally secure a warrant before searching the phone); *United States v. Lieu*, 298 F. Supp. 3d 32, 46 (D.D.C. 2018) (finding agents were permitted to seize and secure the defendant's phone at the time of his arrest, especially where they believed it may contain relevant evidence). The police continued to possess the phone once they heard that A.L. alleged that the Defendant had coerced her into engaging in commercial sex acts, and that the phone might have evidence relevant to those allegations. "The Government's interest in a seizure is strong when there is probable cause to believe the seized item contains

evidence of a crime." *See United States v. Wilkins*, 538 F. Supp. 3d 49, 94 (D.D.C. 2021) (citing *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)).

The Defendant seems to dispute the legality of the car key's and Gold Phone's seizure, but he does not challenge the legality of his arrest. As mentioned above, any property on him during his arrest is therefore lawfully seized. *See United States v. Robinson,* 414 U.S. at 230-34; *Riley*, 573 U.S. at 385-86. The continued seizure of the Gold Phone was also lawful as the police diligently worked to obtain a search warrant to access the phone based on their ongoing sex trafficking investigation and based on probable cause that the phone contained evidence relevant to that investigation. Furthermore, the search warrant was secured approximately two weeks after the phone was seized, so there were no unreasonable delays. *Compare Wilkins*, 538 F. Supp. 3d at 95 (concluding 15-month delay in searching sex trafficking defendant's phone violated the Fourth Amendment), *with Burgard*, 675 F.3d at 1035 (finding that officers made it a priority to diligently present a warrant application to the judicial officer within a reasonable time of six days).

In sum, the Gold Phone and key to the 2017 Kia were lawfully seized incident to arrest. The continued seizure of both items was lawful as the police investigated A.L.'s sex trafficking allegations. Because A.L. had "common authority" over the 2017 Kia and the Blue Phone, the initial search and seizure of the Blue Phone was likewise constitutional. And because a timely search warrant supported by probable cause was later obtained for both phones, the extraction and search of data from both phones was also constitutional. Finally, digital device extractions conducted by other jurisdictions pursuant to lawful search warrants are valid for use by subsequent investigating authorities and prosecutions. *See Jabara v. Webster*, 691 F.2d 272, 277 (6th Cir. 1982) ("Evidence legally obtained by one police agency may be made available to other such agencies without a warrant, even for a use different from that for which it was originally taken.");

*United States v. Hassanshahi*, 145 F. Supp. 3d 75, 92–93 (D.D.C. 2015) (citing *Jabara* with approval).

## CONCLUSION

For the reasons set forth above, this Court should deny the Defendant's Motion to Suppress.

DATED: February 18, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Karen Shinskie*
Karen Shinskie
D.C. Bar # 1023004
Rachel Bohlen
D.C. Bar No. 1010981
Assistant United States Attorneys
United States Attorney's Office
601 D Street NW
Washington, DC
Emails: karen.shinskie@usdoj.gov
rachel.bohlen@usdoj.gov

*/s/ Jessica Arco*
Jessica Arco
D.C. Bar No. 1035204
Trial Attorney
Human Rights & Special Prosecution Section
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530
Email: Jessica.Arco@usdoj.gov